ALBANY,
August, 1805.

Clendining and
Adams
v.
Church.

no joinder in demurrer, or judgment prayed for. If a justice undertake to set out the oath he administered to a constable, and it vary from that prescribed, it is fatal, notwithstanding he state that he " duly" administered it.
* Old edition.
† 4 Sta. Laws 476. ch. 93.

## John Clendining and John Adams *against* John B. Church.

THIS was an action on a policy of insurance on the schooner *Neptune*, from *Wilmington*, *North-Carolina*, to *Kingston*, *Jamaica*. At the foot of the instrument, was a written memorandum in these words: " Warranting no- " thing ; policy to be proof of interest, and no insufficiency " of papers to be of detriment to the insured." The declaration contained no averment of interest in any one.

At the trial, it appeared that the vessel, when pursuing the voyage insured, was captured by a *Spanish* privateer,

Neither a want of averring interest, nor the words of the insurance being " policy to be " proof of inter- " est," are of themselves evidence of a wager policy. On a wager policy, to entitle the as-

T

ALBANY,
August, 1805.

Clendining and
Adams
v.
Church.

sured to recover,
the loss must
be absolutely
total; a tech-
nical total gives
no right.

and, on being chased the next day by a *British* armed ves-
sel, was run, by the prize-master, upon the rocks off the
*Island of Cuba.* That while she lay there, she was board-
ed and retaken by the boats of the *British,* who got her off, af-
ter being much injured in her bottom, and losing her an-
chors, cables and keel. That they then carried her to *Ja-
maica,* where she was libelled and restored, on payment of
one eighth of her value for salvage, but on being hove down
to be examined, was found to be so much damaged, that
to repair her would cost more than the amount of the insu-
rance, by which she was fully covered. In consequence of
this, the *captain,* who was also owner, sold her for £120,
*Jamaica* currency, to Messrs. *Curry and Co.* who repaired
her, but what it cost did not appear. No evidence of aban-
donment was offered.

On this testimony the plaintiffs rested their cause, and the
counsel for the defendant moved for a nonsuit, because, as
it was a wager-policy, and the *Neptune* did arrive, a loss
had not happened; and allowing it to be an interest-policy,
on which the plaintiffs might, notwithstanding the restora-
tion, recover an average loss, yet there was not any proof
adduced to shew its amount. The judge inclining to this
opinion, ordered the plaintiff to be called, and as he did not
answer, granted the nonsuit.

Application was now made to set it aside on the follow-
ing grounds: 1st. That the capture by the *Spanish* priva-
teer made the loss total, and entitled the plaintiffs to reco-
ver. 2d. That if it was an interest-policy, the plaintiffs were
entitled to recover for a partial loss, the amount of which
should have been submitted to the jury.

*Riker,* in support of the motion. On a wager-policy, as
there is no partial loss, a capture, though but for five min-
utes, creates a total one. On this subject the *English* de-
cisions are not many, and those difficult to be reconciled.
The first to which it will be necessary to call the attention
of the court is *Depaba v. Ludlow, Com. Rep.* 361. In that
case the vessel was, after capture, retaken; but the mere
interruption of the voyage was held to give a right to re-
cover. The same principle is found in *Pond v. King,* 1
*Wils.* 191. On a policy for time, the vessel was taken, re-
taken, and restored on salvage; yet the loss was ruled to be

total. In *Whitehead* v. *Bance*, *Marsh.* 426, a similar decision was made. *Pole* v. *Fitzgerald*, *Willes*, 641, does not apply. That was not a case of capture, and the question here is, does a capture make a total loss? On a wager, a capture gives a vested right, which subsequent restoration cannot defeat. On an interest policy, the rule is different, because it is a contract of indemnity, founded on property; the restoration therefore, may affect the claim for a total loss, and make it only an average. No such reasoning can apply to a wager. On the second point, it is to be observed, that the words "interest or no interest," do not necessarily make a wager policy. 1 *Marsh.* 99. That the present was a wager policy is not inferable, from there being no averment of interest in any one. It is not essential to aver interest, in an action on an interest policy. 2 *Marsh.* 591, citing *Crawfurd* v. *Hunter*, 8 *D.* & *E.* 13, where that point was settled on demurrer to the 4th count of the declaration. This then might have been an interest policy; the facts therefore, ought to have been submitted to the jury to determine the extent of the partial loss, as they, in themselves, afforded a means of ascertaining the amount.

*Pendleton* and *Hoffman*, contra. The true principle on which wager-policies turn is, has there been a total loss of the voyage? *Spencer* v. *Franco*, *Park* 75. If not, a mere capture, which neither defeats the voyage, nor alters the property, gives no right of recovery. *Dean* v. *Dicker*, 2 *Stra.* 1250, acknowledges the same position. *Lee*, C. J. says, that had the ship been recaptured before carried *infra præsidia*, the decision, which was in favor of the plaintiff, might have been otherwise. In *Depaba* v. *Ludlow*, the voyage was defeated by the interruption. So in *Pond* v. *King*, the insurance was for time, and the cruise totally lost. The same principle is recognised in *Witherspoon* v. *Banks*, *Marsh.* 406. We admit that in this country, actions on wager policies may be maintained, and that if this be a wager policy, it was not necessary to abandon; but if this be not a wager policy, then we contend the nonsuit ought to stand. The facts could not warrant referring the case to the jury. They had no criterion to estimate an average, and could not be allowed without a *datum* to go by, to settle one by guess. *Crawfurd* v. *Hunter*, is not applicable to the

ALBANY,
August, 1805

Clendining and
Adams
v.
Church.

case before the court. In that case the count demurred to, had words tantamount to an averment of interest. But whatever may be the English decisions on this point, our policies have a clause which renders it necessary. The underwriter contracts to pay only after proof of loss and interest. Against this may be urged the memorandum. If so, then it is a wager policy, and within the arguments used on the first point. They are fully established by the decision in *Pole* v. *Fitzgerald*, which overturned the cases referred to by the opposite side, and established that on a wager policy, there could be no technical total loss. It is not requisite that the ship should actually perish. If she arrive at a port, not that of her destination, it gives a right to recover; but when she does arrive there, a total loss cannot have happened, though a capture may have intervened.

*Riker* in reply. The only reason why interest was ever thought necessary to be averred in a British policy, was to take it out of the 19 *G.* 2. *c.* 37, against wagering insurances. Therefore, where the contract is upon foreign property, no averment of interest is required, *Nantes* v. *Thompson*, 2 *East* 385. The determination in *Franco* v. *Spencer*, turned on the evidence not maintaining the count. The declaration stated a capture by enemies; and it was proved that at the time when the vessel was taken, preliminaries of peace were signed, so that there was, in fact, no enemy existing. To protect the insured against a capture on a wager policy, the same words are used as in one on interest; on both, therefore, the construction must be the same.

*Per curiam,* delivered by KENT, C. J. This must be considered in the light of a wager-policy. The words "Policy to be proof of interest," are not considered as being of themselves evidence of a wager-policy, 2 *East,* 390,* although the statute of 19, *G.* 2. seems to prohibit policies with such clauses inserted, on the ground of their being wagers. Nor is the want in the declaration of an averment of interest in the plaintiffs, either in their own right or as trustees, to be considered as decisive evidence of no interest, since it has been ruled in the case of *Nantes* v. *Thompson*, 2 East 392, that such an averment is not requisite even in an interest-policy. But these circumstances taken in connection with a fact stated in the present case, that

* *Nantes* v.
*Thompson.*

the captain was owner of the vessel, will determine the nature of the policy, especially as no agency or trust is any where pretended by the plaintiffs.

Assuming it then as a fact, that this is a wager-policy, the question is, whether the capture by the *Spanish* privateer amounted to a total loss ?

This was a bet upon the arrival of the vessel at *Kingston* in *Jamaica*. The perils which may have happened to the vessel on the voyage, are immaterial, provided she performed her voyage, for that determines the bet in favor of the insurer. It is stated that the vessel did arrive at *Jamaica*, and as no question is made about the particular port at which she arrived, we may intend that she arrived at *Kingston*. The intermediate capture was immaterial, as the voyage was performed before suit brought. This point does not, however, appear to be well settled in the books. Some of the cases, and particularly that of *Dean* v. *Dicker*, 2 *Stra*. 1250, go to prove, that even upon a wager policy, if the ship be taken, it is a total loss, however illegal the capture may be, and although the ship be taken or restored. *Marshall*, 424. But from what fell from *Lord Mansfield*, when speaking of the case of *Pole* v. *Fitzgerald*, in *Goss* v. *Withers*, 2 *Burr*. 695, and from what was observed by him, and the other judges of *K. B.* in *Kulen Kemp*. v. *Vigne*, 1 D. & E. 308, 310, the inference would rather seem to be, that a temporary capture, with a subsequent recovery and final arrival at the port of destination, was not a total loss in the case of a wager-policy. This to me, appears to be the most advisable rule.

A temporary capture, in the case of an interest-policy, is a total loss only at the election of the insured, and unless he abandon pending the capture, he cannot make it a total loss. It is, therefore, not an absolute total loss, but a total loss at the election of the party. But in wager-policies, the loss should be absolutely and finally total, for otherwise a temporary embargo of only a day, without any other interruption of the voyage, would be a total loss, although the vessel should have arrived in safety. I the more readily adopt this opinion, because wager-policies ought not to be encouraged, and it is not pleasant that the time of the court should be occupied in discussing them.

LIVINGSTON J. Though I concur in the opinion of the court as delivered by the *Chief Justice*, I shall trespass on the patience of the bar, in stating the reasons that have led to this coincidence.

There can be no doubt, this was not intended as a gambling insurance. The policy is made " proof of interest," only to dispense with establishing that fact in the ordinary way. The nature of every insurance, whether on interest or otherwise, should perhaps always depend on the truth of the case, and not on any equivocal terms which may have been used for different purposes. Without determining, however, to which class this contract belongs, the nonsuit was in either case proper.

If of the gaming kind, as the vessel arrived at *Jamaica*, a total loss did not happen, in which event only can there be a recovery. It was strenuously insisted, that a capture even for *five minutes*, confers a right to recover on such policy, which cannot be defeated by a subsequent release and safe arrival of the property. Were we to sanction so extravagant a position, all insurances, especially during a war, would be converted into wagers, as the merchant on the slightest interruption, would receive payment for a total loss ; and also, if liberated, retain his property, the assurer himself not being entitled to salvage. It is astonishing that courts have ever intermeddled with wagers of any kind. It is not however for us to apply a remedy : this must be left to the *legislature*. In *England* this species of gaming is restrained by act of *parliament ;* and until our *legislature* provide the same wholesome checks, it is our duty not to hold out unnecessary encouragement to a practice, which, instead of promoting fair trade, the only legitimate object of marine insurance, is a direct incitement to the worst species of fraud. This we should do, were we to place the assured in a wager-policy, on a more favoured footing than those who have a real interest at stake, which is the direct tendency of the plaintiffs' interpretation.

On an interest-policy, it is conceded, that capture for a time, is not a total loss, unless followed by abandonment while the restraint continues. If the cargo be valuable, or on its way to a good market, the owner will frequently prefer the chance of restoration to an immediate cession ; but

on the plaintiffs' principles, a moment's restraint fixes the underwriter of a wager-policy, although the property immediately after arrive at its destined port. I should be sorry if this were law, but it is not, and mischievous would be the consequences of a rule of the kind. It is of no use to enquire what length of possession after capture divests an owner of his property; or whether the prize must be conducted *infra præsidia*, or if an actual condemnation must intervene. It is now well settled, that the only question which can occur between parties to a policy is, whether there was a capture in fact, with this difference however, that on policies on interest, an abandonment may immediately be made, and the underwriter thus charged with a total loss; but on other policies, there can be no abandonment to fix the party, and therefore a right to recover cannot depend on the single circumstance of capture, but on its consequences as to the future fate or destination of the vessel. As the assurer has no salvage, and cannot be called on for a partial loss, his undertaking must necessarily be, not that the vessel shall not be taken, but that she shall not be *lost thereby*, or ultimately stopped in her voyage. If she arrive safe, even after a capture, he wins, or rather does not lose the wager. Why, indeed, should a momentary obstruction by capture, any more than a detention to refit, after a fire or storm, be estimated a total loss? The injury in the first case is often less than in either of the other. Were the insurer's liability to depend on the naked fact of capture, how easy would it be, where there was an insurance on interest in the form of a wager, to induce a belligerent to possess himself of the property a little while, with the express view of charging the underwriter with a total loss. The assured might always with a little management win the wager, and at the same time secure his property.

But without further reasoning, the *English* authorities, cited by plaintiffs' counsel, are directly opposed to his client's pretensions. In *Depaba* v. *Ludlow*, the court did not proceed on the fact of capture *alone*, but on the " damage " which the plaintiff received by the *interruption of his voyage;*" for the vessel on being recaptured, was brought to *Harwich*, and that too, not *until after an action was commenced on the policy.* It is not mentioned whither the vessel was

ALBANY,
August, 1805

Clendining and
Adams
v.
Church.

Com. 361.

insured, but from the reasoning of the court, it could not have been to *Harwich*; and then as she did not arrive at her destined port, the bet was clearly lost, and the defendant liable.

In *Pond* v. *King*, the insurer undertook that a certain privateer should *cruise in safety three months*; the jury found she was prevented by capture, *from cruising for that period*, and judgment was rendered against him, not merely because of the capture, but of *its effects*, for the interruption of the cruise, which was the subject insured, is expressly made the ground of decision; but even this authority is shaken, if not overturned by a judgment of the *House of Lords*, which will be presently mentioned. In the case of *Dean* v. *Dicker*, at *Nisi Prius*, it does not appear whither the vessel was conducted after being cut out of a *Spanish* port, where she had been eight days; of course it can form no authority here, and besides, it is very evident that *Lord Chief Justice Lee* was not governed by the solitary fact of a capture or short detention on the high seas, but considered the property as divested by being " detained " eight days in an enemy's port." It might, says he, have been otherwise, if the ship had been recaptured *before she was carried infra præsidia.*

But if any obscurity remain after these cases, the question, how far a temporary interruption by capture amounts to a loss of the wager, the *Exchequer Chamber* and *House of Lords* have established conclusively in *Pole* v. *Fitzgerald*, that " though a ship may be deemed *for a time lost*, yet, if " she be afterwards recovered, a total loss has not happened " within the meaning of the wager." Such is *Lord Mansfield's* understanding of this decision, which indeed admits of no other, and contains in itself a complete answer to all that has been here urged in favor of the assured. In *Kulen, Kemp*, and others, v. *Vigne*, the arrival of the ship is regarded as the event insured by a wager policy, and although there might have been an abandonment, if it had been an insurance on interest, yet, " as there was only a *temporary* " *capture*, we must," says *Lord Mansfield*, " consider what " the truth of the case is between the parties;" and because the vessel *might* have prosecuted her voyage after she was liberated, the underwriter was not held liable. This vessel

ALBANY,
August, 1805,

Clendining and
Adams
v.
Church.

had been detained in *Spain*, in consequence of a capture, more than *two years*, but as she might afterwards have gone on to *Marseilles*, the plaintiffs were deemed not to have won the wager. The insured here, I admit, were very hardly dealt with, for after a sale of the cargo, and a condemnation in Spain, which was not reversed until after a detention exceeding two years, it could not be expected that the vessel was, in contemplation of the parties, to proceed in ballast to *Marseilles*. Without going the whole length of this decision, which is no authority with us, it however establishes, as well as the other cases, beyond the possibility of doubt, that in *England*, the holder of a wager-policy cannot recover, if the vessel reaches, or *might have reached*, her port of destination, *even after a detention by capture, or otherwise*. The *Neptune*, it will be remembered, reached *Kingston* after a very short obstruction. Neither then, on the ground of authority, nor reason, can the plaintiffs' claim for a total loss be sustained.

If this be an interest policy, the nonsuit is yet more free of difficulty. There being no abandonment during, or even after the restraint, the loss, it is granted, is not total. The objection to a verdict for a partial loss arose at the trial, from the total want of evidence as to its *extent*. It is not enough to prove an injury, but its nature and *quantum* should be ascertained. This must be in the assured's power, and if he withhold, or neglect to produce the proper proof, a jury ought not to be permitted, at hazard of doing injustice, to come to a determination on vague and uncertain conjectures. No one upon this evidence, can say, whether a thousand dollars, or as many eagles, would have been an indemnity. As to the salvage, there was no proof whatever to what it amounted ; it was an eighth of the *Neptune's* value at *Jamaica*, but what she was appraised at, or deemed worth in that island, does not appear, and it was of course impossible to say what was paid on that account. In trover for a ship, the *value as* well as the conversion must be proved. One vessel may be worth fifty thousand dollars, and another not as many cents. How then is a jury, without proof on this point, to come to a proper result? So the repairs of a vessel may cost a very large sum, or may not amount to as much *per cent.* as will entitle the assured to

U

any recovery. To let a jury determine without some evi‑ dence of this fact, (for here was none at all) would be sub‑ jecting the defendant to an arbitrary assessment of damages, and allowing a plaintiff to take advantage of his own laches. On this ground, I directed the plaintiffs to be called at the trial, and see no reason to change my opinion. The plain‑ tiffs must take nothing by their motion.