WILSON *against* JOHN.

IN ERROR.

1809.

*Philadelphia,*
*Tuesday,*
December 26.

UPON a writ of error to the Common Pleas of *Chester* county, the case was thus:

It was an action of trespass and false imprisonment against *Wilson*, to which he pleaded *not guilty* and *justification*, with leave to give the special matters in evidence.

Upon the trial of the cause, the plaintiff proved his arrest under the following warrant, signed by the defendant, and that he had been committed to jail by virtue of it. " The " commonwealth of *Pennsylvania* to the 27th regiment of " *Pennsylvania*, and 5th company. Whereas the persons " named in the schedule or list hereto annexed," (including the name of *John*) " have by the court of appeal of their " proper battalion, been duly sentenced to pay the fines to " their names respectively subjoined, this warrant therefore " authorizes and requires you, according to law, to levy col- " lect and pay over all the fines aforesaid. Given under my " hand and seal the fifth day of *November* one thousand " eight hundred and three. *James Wilson*, captain (L. S.) " To *Charles Still*, collector. To the constable of *Uwchlan*."

The defendant, to prove a justification under the militia law, then gave in evidence three commissions from the governor of *Pennsylvania* to himself, *William Kennedy* and *Jacob Barstler*, the two first as captains, and the last as lieutenant in the 27th regiment; and that they had acted under those commissions at the time of holding the court of appeals hereafter mentioned. He then offered in evidence the following document, purporting to be the proceedings of the court of appeals, having first proved the signatures. " At " an appeal held *October* 28, 1803, at the house of *Benjamin* " *Millard*, for hearing of the delinquents for non-attendance " on military duty, we the subscribers have impartially " heard all those who have made application, and to the best " of our judgments, the following persons, belonging to cap- " tain *James Wilson's* company, are fined." (Then followed a schedule containing the name of *John* and others, and the

*A militia court of appeals, which by law is composed of three commissioned officers appointed by the commanding officer of the regiment, is not a court of record, as it has not the power to fine and imprison, but merely to remit fines for certain causes. Before its proceedings can be read in evidence, in an action of trespass against a captain who justifies under its sentence, it must therefore be shewn that the court was regularly constituted, which can only be done by producing the commission of the commanding officer of the regiment, and the commissions of the officers composing the court, by shewing their appointment, and that in all material respects they have complied with the law.*

1809.

WILSON
*v.*
JOHN.

fines.) " Witness our hands, *James Wilson* captain, *William* " *Kennedy* captain, *Jacob Barstler* lieutenant, Judges.

To this evidence the plaintiff objected, and it was ruled to be inadmissible, until it should be proved that the court was legally constituted, and had taken an oath or affirmation, according to the 17th section of the militia law of the 6th *April* 1802, which is as follows: " *And be it further enacted* &c. that " in order to ascertain those persons who by their absence " on days of exercise, shall have incurred the fines before " mentioned, a sergeant, or the clerk of each company, on " every such day, in the presence of the captain or command- " ing officer of the company, at the end of one hour after " the time appointed for the meeting of the company, batta- " lion, or regiment, and also after the exercise is over and " before the men are dismissed, shall call over the muster " roll of the company, noting those who are absent; and " within two days after every company or regimental meet- " ing, a return shall be made by him to the captain or com- " manding officer of each company, under the penalty of " five dollars for every time he shall neglect or refuse to " make such return of all the absentees on the several days " of exercise, particularly designating the day on which each " default was made; and it shall be the duty of *the command-* " *ing officer of each regiment* annually, in regimental orders, " to be issued previous to the days appointed by this act for " training the militia in the months of *May* and *October*, to " appoint *six commissioned officers, three to preside in each* " *battalion for the current year as a court to hear appeals,* " *who, when sitting as such court, shall be under oath or affir-* " *mation, to be administered by any judge or justice of the* " *peace, to perform their duty with fidelity and impartiality;* " and who shall, in not less than ten nor more than fifteen " days after the meeting of the regiment in the months of " *May* and *October* annually, hear the appeal of every per- " son conceiving himself aggrieved and applying to be " heard; *and if it shall appear to the satisfaction of the court* " *of his proper battalion, that by lameness or sickness or any* " *unavoidable necessity, his attendance was rendered imprac-* " *ticable on the day or days for which he may stand charged,* " *the said court shall remit the fine or fines incurred, for the* " *reasons aforesaid* ONLY; *but no excuse shall be received, nor*

" *any redress given by them at any other time, or in any other* " *manner than is before mentioned.*" 5 *St. Laws* 234.

The defendant then proved that an oath or affirmation was duly administered to the judges, before they proceeded to the execution of their duty; and having called *Joseph Grier*, who swore that he appointed the persons before mentioned to hold the court of appeals, and that at that time he commanded the 27th regiment as lieutenant colonel, the defendant again offered in evidence the proceedings of the court. But they were a second time objected to, upon the ground that it ought first to be proved that *Grier* was lieutenant colonel of the regiment, which could be done only by shewing his commission; and the court being of this opinion, the evidence was rejected, and the defendant tendered a bill of exceptions.

*Frazer* for the plaintiff in error, contended that the most reasonable construction of the law should be adopted, for the protection of officers, since the militia system was throughout compulsory upon them, and in this particular case the defendant was bound by the 19th section, under a severe penalty, to issue his warrant to the constable within ten days after the sentence of the court of appeals. The question is, not whether the proceedings were conclusive as to what they set forth, but whether the defendant was not entitled to read them in evidence without producing the commission of a third person. They should have been read upon two grounds. 1. Because they were the proceedings of an inferior court of record, which required no proof but the signature of the judges. 2. Because the parol proof was equal to if not better than the commission required.

1. The court was constituted by the 17th section of the militia law, with power to sentence military delinquents to a fine, the payment of which may be enforced by imprisonment; and it is therefore an inferior court of record. Such must have been the opinion of the legislature, or they could not have thought it necessary by the 18th section to provide that no *certiorari* should issue to remove its proceedings to any court in the commonwealth, nor would they have spoken of its decisions by the name of *sentences* and *decrees*, of which they prohibit all courts from taking cogni-

1809.

WILSON
*v.*
JOHN.

1809.

WILSON
*v.*
JOHN.

zance in the way of appeal. Such also is the result upon the principles of the common law, by which every jurisdiction erected *de novo* with power to fine and imprison, is a court of record. *Groenvelt* v. *Burwell* (a). 3 *Bl. Comm.* 24. That the fine is fixed by law, is no objection, because so it is in a variety of cases cognizable by the quarter sessions; nor is it of any moment, that the judges exercise the jurisdiction by way of appeal, and do not issue the warrant to execute their own decrees, because they constitute the only tribunal for definitively fixing the militia fines, and it is in fact their sentence which is executed by the warrant of the captain. Being thus an inferior court of record, the proof in question should not have been asked of the defendant, who was not sued as a member of the court, but for his independent act. Had the members of the court been sued in trespass, their authority might have been questioned; but since they had jurisdiction as to the matter of fines, unless their want of jurisdiction as to the person or place appeared on the record, the defendant was not a trespasser, whatever were the errors of the court; *Bull. N. P.* 83; *Terry* v. *Huntingdon* (b); *The case of the Marshalsea* (c); particularly after the appeal had gone by. *Durant* v. *Boys* (d).

2. It is the duty of the *commanding* officer, not of the lieutenant colonel particularly, to appoint the court. Who was the commanding officer, is a matter in *pais*, to be proved by parol, and not by the commission. Besides, the commanding officers of regiments do not derive their authority from their commission, but from their election by the militia, which distinguishes this from the common case of a commissioned officer; and there is in the very act under which the defendant justified, a recognition by the legislature that *Grier* commanded the 27th regiment.

*Hemphill* and *Ross* for the defendant in error. The plaintiff below was imprisoned by the act of *Wilson*, who was desirous to justify under a paper signed by himself and two others as a court of appeals; and the point is, whether to make that paper evidence, it was necessary to shew that the

| | |
|---|---|
| (a) 1 *Ld. Ray.* 467. | (c) 10 *Co.* 76 a. |
| (b) *Hardress* 480. | (d) 6 *D. & E.* 580. |

court-had a lawful existence. The questions then are,
1. Whether the proceedings of the court are even *prima facie*
evidence of the court's authority. 2. Whether sufficient proof
was given *dehors*.

1. The court of appeal has none of the properties of a court
of record. The only circumstance relied upon to give it this
character, is the power to fine and imprison, which it does
not possess. The fine is incurred before a return is made to
the court, and its authority is exclusively confined to the
*remission* of it, and that for the specified causes of sickness,
lameness, or unavoidable necessity, and no other. It has no
power whatever to punish, but only in a limited way to miti-
gate punishment; and it is this which distinguishes the present
case from *Groenvelt* v. *Burwell*, where Lord *Holt* limits his
principle thus, that where a man has power to *punish* another
for his offence by fine and imprisonment, he has judicial
authority; and when a court is erected with this authority,
it is a court of record. The court of appeals moreover have
no authority to imprison; it is the captain who issues the
warrant, not upon their sentence, for they never decree any
thing but a remission; but upon the sentence of the law,
where the court do not interfere. The proceedings not being
evidence, it became the duty of the defendant in an action of
trespass to prove every thing. If a man justify a trespass as
justice of the peace, he must shew his commission. *Esp.
Dig.* 741. If a court martial exceeds its jurisdiction, the
members are trespassers, and so is the officer executing their
warrant. *Wise* v. *Withers* (a). It is therefore necessary to
shew jurisdiction, which cannot be shewn unless the legal
existence of the court is first proved. Even the judges of a
superior court, must shew their authority, if sued in trespass.
*Gwinne* v. *Poole* (b).

2. Whether *Grier* was commanding officer within the law,
was not a fact to be proved by parol. If it were immaterial
whether he commanded lawfully or unlawfully, it might be
so; but the question is, was he lawfully appointed comman-
der. And of this the commission was the best evidence. He
might have been elected, but unduly; he might have com-
manded, but unlawfully; the best evidence of his valid elec-

*1809.*

WILSON
*v.*
JOHN.

(a) 3 *Cranch* 331.                    (b) 2 *Lutw.* 1560.

tion and of his lawful command, was the commission. It was not only the best evidence, *Peake Ev.* 8, but it is almost impossible to shew an appointment otherwise than by proving a commission. *Marbury* v. *Madison* (a). As to the recognition in the act of assembly, it amounted to nothing, because the law was passed in 1802, and the question was as to his command in 1803.

*Frazer* in reply said, that however judges of a court of record might be forced to shew their commissions when personally sued in trespass, it certainly was not the case with the prothonotary who issued the writ, in which relation the defendant might be considered as standing to the court of appeals. In *Marbury* v. *Madison* the appointing and commissioning power were the same, and therefore the commission was almost essential to the proof of the appointment. Here the election was by one body, and the commission by another; so that there might be a valid election and command without a commission.

TILGHMAN C. J. delivered the court's opinion.

This action was brought in the Common Pleas of *Chester* county, by *David John* the defendant in error against *James Wilson* the plaintiff in error, for a trespass in issuing a warrant as captain of the militia, by virtue of which the plaintiff below was arrested. The defendant justified under the militia law, passed 6th *April* 1808; and in the course of his defence, offered in evidence a paper writing, purporting to be the proceedings of a court of appeals, which was objected to by the plaintiff, and overruled by the court. This is the first exception in the cause. The law directs that the court of appeals shall consist of three commissioned officers, to be appointed by the commanding officer of the regiment, who shall, when sitting, be under oath or affirmation to perform their duty with fidelity and impartiality. The Court of Common Pleas were of opinion it should be proved, not only that the members of the court were officers, by producing their commissions, but also that they took the oath prescribed by law. In this we think they were right. This court is of the

(a) 1 *Cranch* 155.

nature of special commissioners, and not a court of record as the defendant's counsel have contended. It is said they have power to fine and imprison, which is the distinguishing quality of a court of record. But they have no such power. Their authority is limited to *remitting the fines* of such appellants, as shall give satisfactory proof, that their non-attendance on the days appointed for exercising the militia, was occasioned by " lameness, sickness, or unavoidable ne-" cessity." It was necessary therefore to prove, before the proceedings of this court were read in evidence, that they were legally constituted, and had pursued the law in all material points.

The Court of Common Pleas having delivered their opinion on this point, the defendant gave evidence that the court of appeals had taken the oath prescribed, and then offered their proceedings in evidence again; at the same time offering parol testimony, that lieutenant colonel *Grier*, by whom they were appointed, was commanding officer of the regiment. The court rejected the evidence a second time, because the commission of lieutenant colonel *Grier* was not produced. In this also we think they were right. A man may assume command without lawful authority. The lawful authority is the commission, and that is to be proved by producing it in court. Our opinion therefore is that the judgment of the Court of Common Pleas be affirmed.

Judgment affirmed.