Pee Cueiam.
 

 This was an action of ejectment in the Circuit Court of Montgomery, on the trial of which it appeared that John Garrel had a grant for 440 acres of land, situated in that county, which was dated on the 14th of September, 1787.
 

 
 *716
 
 Heydon Wells, a justice of the peace for that county, reported to its court at July sessions, 1801, a list of taxable property in the county of Montgomery not listed for the year 1799, nor the taxes paid thereon. * The names of a number of persons with their lands are specified, among which is a tract of John Garrell, thus described : “ John Garrell, 440 acres near Donalson’s Creek.” At the same court it was ordered by the court that the clerk should make out a report of those lands agreeably to the 14th section of the act of 1797, ch. 1. At January term, 1802, of the County Court, it was adjudged and ordered that the tracts of land entered in the names of the following persons, specifying their names, among which was “ John Garrell, 440 acres, four dollars,” should be subject to the taxes thereon, with the costs. Upon this judgment an execution issued against the lands of John Garrell, returnable to April sessions of that court. The sheriff indorsed that he had levied on 93 acres, but not sold, because he had not obtained the new law. which required it to be advertised in the Gazette. From April sessions an execution issued against the lands of John Garrell, for the amount of the tax and costs, returnable to July sessions, upon which was indorsed the sheriff's return that he had sold it for 21 mills an acre, making thereby the amount of the tax and costs. At the County Court, in April, 1807, the sheriff of the county returned a list of lands that had not been given in for taxes for the year 1806, among which was one in the name of John Garrell, for 347 acres, upon which it was ordered by the court that the clerk make a certificate of the same, together with the amount of taxes and charges due severally thereon, and cause the same to be published, agreeably to the act of the General Assembly, giving notice that the tracts of land or so much of them, respectively, will be sold as the law directs.
 

 At October term, 1807, it was ordered, adjudged, and directed by the court, that these lands be subject to the payment of the public taxes and costs thereon, and of the county tax for the year 1806, agreeably to law, and that execution issue accordingly. Upon * this judgment execution issued against the lands of John Garrell, returnable to January sessions, 1808, on which the sheriff made return in the usual form, viz: Came to hand same day levied, and sold the 8th day of January, 1808, to John M‘Carrol, for $ 7.26, he being the highest bidder, for which he is
 
 *717
 
 entitled to my deed for 345 acres of said land, if not redeemed according to law. Taxes and costs, f> 7.26. Signed, John Cocke, Shff.
 

 At April term of the court', the sheriff and collector reported 320 acres of land in the name of John Garrell, due for the taxes of the year 1805, upon which the usual proceedings took place, and execution issued against the lands of John Garrell, returnable to July, 1807 ; the sheriff returned on that execution, that he had levied on Garrell’s land, and on the 6th of October, 1807, sold the same to John M‘Carrol for $ 7.43, for which M‘Carrol was entitled to his deed for 347 acres of land, if not redeemed according to law. Signed, John Cocke, Shff. M. C.
 

 Tax and costs, $7.43. On the 30th of July, 1811, Cocke, the sheriff, made two separate deeds to M‘Carrol, one for 93 acres, sold for the taxes of the year 1799, the other for 347 acres, sold for the taxes of the year 1805.
 

 On the trial of the ejectment, after giving the judgment of the County Court for taxes in evidence, the lessor of the plaintiff offered these two deeds in evidence, but they were excluded from going to the jury by the opinion of the Circuit Court. To this opinion exception was taken, and the question now is, with * this court, whether that opinion is correct. In the course of the discussion the acts of 1797, ch. 2, and 1803, ch. 2, have been referred to. These acts impose certain taxes on all lands, and make it the duty of owners and agents to render lists of taxable property, including lands, in the manner and at the time expressed in them. In case they fail to do so, they .are subject to pay double tax and liable to a fine. It is also made the duty of the returning justice, of the peace to report such lands as may not have been given in or listed by owners or agents ; and the better to secure the revenue in case any lands should escape the notice of the justice, it is made the duty of the sheriff to report such lands on which no personal property can be found to levy, and which had not been given in nor reported by the justice. Other preliminary steps are required, such as that the returning justice shall advertise the time and place for his receiving lists, &c. The grounds taken by the defendant in the Circuit Court were, that the proceedings of the County Court were those of a limited and summary jurisdiction, and consequently that anything that the acts of Assembly required to be done should apr pear on the record, otherwise the judgments and all subsequent
 
 *718
 
 .proceedings were absolutely void; for which Cro. Eliz. 278, 270; Cro. Jas. 246; and Jacobs’s Law Dictionary, title “Void and Voidable,” were relied on ; and consequently the court below acted correctly in excluding the sheriff’s deed.
 

 On the part of the plaintiff in error, this argument was not by the inferences deducible, as was contended from Bull. N. P. 173, 66, 83; 1 Haywood, 24; 2 Bac. Ab. 500; Tenn. Rep. 467, 348; 2 Hay. 80; 2 Bac. Ab. 450. The court understands the general principle to be that the record should show all facts required by law to give jurisdiction to the County Court.
 

 It is not necessary that the record should show the evidence which enabled the court to act.
 

 * Being intrusted by law to. judge of that, this court is bound to presume that they had the necessary evidence before them, before passing judgment. The superior tribunal should be strict and careful to see that inferior tribunals possess jurisdiction of the subject matter; but as to the manner of exercising that jurisdiction, when these judgments are brought collaterally into view, the law presumes them to be correct, and that all previous requisites and facts, required by law to be shown to enable them to act, appeared, unless the contrary appear from the record, or unless those preliminary steps were not
 
 in pais
 
 or required to be recorded. As a further reason that the record should show all that the law required to be done previous to judgment, it is insisted that these proceedings under the tax laws are summary,
 
 ex parte,
 
 and in derogation of the principles of the common law. In support of this proposition it is urged, that the Constitution provides that no man shall be deprived of liberty or property but by the judgment of his peers or the law of the land. It is certainly true that they have the character of summary proceedings, and it is equally true that they must of necessity be so; for, if the government were necessitated to take the cautious and tedious steps of the common law, in giving personal notice, making up regular pleadings, and having a trial by jury, it would cease to exist. Want of money to carry on its necessary operations, loss of credit, and a total extinction of national faith, the basis of all regular governments, must be the inevitable consequence. The nicety insisted on by the defendant’s counsel in relation to the proceedings of the County Court, would, in a considerable degree, produce the same effect. Many things
 
 *719
 
 must appear to the County Courts agreeably to law, before they render judgment against lands. It must be shown-that the justice appointed to take tax lists has done his duty in advertising for owners and * agents to meet and give lists, that proper periods have elapsed,- that there is no personal property from which the taxes can be made, &c. Few County Courts are acquainted with the forms of business, and none that thought it necessary that their records should exhibit this particularity. ■
 

 Nor is it probable that if they believed it was necessary, it would soon be understood that these defects would invalidate all sales, and consequently but few could be found to purchase, the public revenue, so essential to the existence of society, greatly impaired, and the owner much injured by his property selling for little or nothing. The court, however, do not consider these proceedings as
 
 ex parte.
 

 Agreeably to the practice and necessities of governments, where taxes are imposed on property, the'proceedings to enforce pavment must be
 
 in
 
 rem, and are analogous to such proceedings under the law of nations, where all persons are presumed to be parties.
 

 Many of the lands of our country are owned by persons abroad, on whom personal notice could not, be served, and if it was requisite to serve notice on each resident, the public revenue would be swallowed up by the expense attending its collection.
 

 No government, of which we have any knowledge, has adopted this method of proceeding.
 

 The law requires that every individual owning lands within the State should pay the taxes on it; every proprietor is presumed to know the law,- and .that he should pay without demand or personal notice. In fiscal arrangements the promulgation of the law is equivalent to the common law idea of notice. Persons owning taxable property, are bound to pay the taxes, though the directory provisions of the law may not have been complied with by the officers intrusted with the execution.
 

 The ground of jurisdiction is afforded to the County * Court by the existence of two facts; first, that the property taxed is situated within the county ;. secondly, that its owner is delinquent in discharging the taxes charged on it agreeably to law. When the court see these two facts spread on the record, it is all that is, necessary for them to see with a view to the legality of a judgment for taxes.
 

 
 *720
 
 In support of judgment of a court of competent jurisdiction, all directory requisites of the law are presumed to have been complied with. And this presumption attaches as well to the judgments of inferior or limited courts, as those proceeding according to the course of the common law. In the latter, a want of jurisdiction is never presumed.
 

 In a court of limited powers the reverse of this provision holds; and in the proceedings of all courts where jurisdiction of the subject matter exists and appears expressly or by presumption, the law resumes that the exercise of that jurisdiction was regular.
 

 A summary mode of levying taxes on lands had been in exist-en ce previous to and at the time of the formation of the Constitution.
 

 It was manifestly the intention of the convention that summary proceedings, such as the people had been accustomed to, should not be inhibited. The expression used in the Constitution, “ law of the land,” communicates the idea of such proceeding of the courts as had been customary, or should thereafter be provided, conformable to the spirit of those habits, and of the common law. See 2 Hay. 142, 320, 321, 322. The Constitution has no
 
 effect
 
 on these proceedings. The first and vital principle of all regular governments is a revenue to support its operation and existence. Without it the government must soon perish. All governments, to raise this revenue, lay taxes on property, and their proceedings necessarily must be summary and
 
 in rem
 
 as to that. Acts made for * its attainment of these essential objects of the State, must receive such construction as will effectuate the intention of the Legislature, where it is not opposed by the provisions of the Constitution, or restricted in the- effect by legal principles applicable to the proceedings necessary to carry into effect that intention.
 

 The court is of opinion that the provisions of these acts are neither prohibited by the Constitution, nor restricted by legal presumption. See 2 Johns. 378, 913; Mass. 379; Camp. Rep. 217; Hardin, 372; 2 Hay. 135; Ad. 186; 1 Caines, 594; 4 John. 292; 2 Binn. 209; 3 Caines, 141, 152, 162; 1 Bay. 356, 357; 2 Bay. 105; Day, 170, 310; N. 312; Bull. N. P. 245; 2 Gould’s ed. Esp. N. P. 468, &c.
 

 The judgment of the Circuit Court must be reversed, and the sheriff’s deed given in evidence in support of the claim of the lessor of the plaintiff.
 

 See
 
 Campbell
 
 v.
 
 McIrwin,
 
 4 Hay. 60, and note
 
 sub fin.