This was an action of ejectment in the circuit court of Montgomery, on the trial of which it appeared that John Garrell had a grant for 440 acres of land, situated in that county, which was dated the 15th September 1787. Heydon wWells a justice of the peace for the same county, reported to its court at July sessions 1801, a list of taxable property in the county of Montgomery, not listed for the year 1799, nor the taxes paid thereon, the names of a number of persons, with their lands are specified, among which, is a tract of Garrell, thus described, "John Garrell 440 acres near Donaldson’s creek.” At the same court, it was ordered by the court, that the clerk should make out a report of these lands agreeably to the 14th section of the act of 1797, ch. 2. At January term 1802 of the county court, it was adjudged and ordered, that the tracts of land entered in the names of the following persons, specifying their names, among which is "John Garrell, 440 acres, 4 dollars,” should be subject to the taxes thereon, which the costs. Upon this judgment an execution issued against the lands of John Garred returnable to April sessions of that court.
The sheriff returned that he had levied on 93 acres of land, but “ not sold, because he had not obtained the new law, which required it to be advertised in the Gazette." From April sessions an execution issued against the lands *216 of John Garrell for the amount of the tax and costs, returnable to July sessions, upon which was endorsed the sheriff’s return, that he had sold it for twenty-one mills an acre, making thereby the tax and costs.
At the county court in April 1807, the sheriff of the county returned a list of lands, that had not been given in for taxes for the year 1806, among which, was one in the name of John Garrell for 347 acres ; upon which it was ordered by the court “ that the clerk make a certificate of the same together with the amount of taxes and charges due severally thereon, and cause the same to be published agreeably to the act of the general assembly, giving notice, that the tracts of land, or so much of them respectively, will be sold as the law directs.” At October term 1807 it was “ ordered, adjudged and decreed, by the court, that these lands be subjested to the payment of the public taxes and costs due thereon and of the county tax for the year 1806 agreeably to law, and that execution issue accordingly. Upon this judgment execution issued against the lands of Garrell returnable to January sessions 1808, on which the sheriff made return in the usual form (viz.) “ came to hand the same day” levied and sold the 8th day of January 1808 to John M'Carrell for seven dollars twenty-six cents "he being the the highest bidder, for which he is entitled to my deed for three hundred and forty five acres of said land, if not redeemed according to law.”
Taxes and costs 87 26.
(Signed) JOHN COCKE, Shff.
At April term of the court, the sheriff and collector reported 320 acres of land in the name of John Garrell, due for taxes or the year 1805, upon which the usual proceedings took place, and execution issued against the lands of Garell returnable to July 1807 ; the sheriff required on that execution that he had levied on Garrell’s land and on the 10th of October 1807, sold the same to John M’Carroll for 87 43, for which M’Carroll was entitled to his deed for 347 acres of land if not redeemed according to law.
Tax and costs §7.48.
(Signed) JNO. COCKE, Sh’ff. M. C.
On the 30th July 1811, Cocke, the Sheriff, made two seperate deeds to M’Carrell, one for 93 acres, sold for the taxes of the year 1799, the other for 347 acres, sold for the year 1805. On the trial of the ejectment, after giving the *217 judgments of the county court for taxes in evidence, the lessor of the plaintiff offered these two deeds in evidence, but they were excluded from going to the jury by the opinion of the circuit court. To this opinion an exception was taken, and the question now is, with this court, whether that opinion is correct.
In the course of the discussion, the acts of 1798, c. 2, and 1803 c. 3, have been referred to. These acts impose certain taxes on all lands, and make it the duty of owners and agents to render lists of taxable property, including lands in the manner and at the times expressed in them ; and in case they fail to do so, they are subject to pay double tax fine.
It is also made the duty of the returning justice of the peace to report such lands as may not have been given in or listed by owners or agents ; and the better to secure the revenue, in case any lands should escape the notice of the justice, it is made the duty of the sheriff to report such lands, on which no personal property can be found to levy, and which have not been given in, nor reported by the justice. Other preliminary steps are required, such as that the returning justice shall advertise the time and place for his receiving lists, &c.
The grounds taken by the defendant in the circuit court, were, that the proceedings of the county court were those of a limited and summary jurisdiction, and consequently, that every thing the acts of assembly required to be done, should appear on the record, otherwise the judgment and all subsequent proceedings were absolutely void ; for which Cro. Eliz 278, 270, Cro. jac. 246 and Jacob’s law dictionary, title void and voidable were relied on ; and consequently that the court below acted correctly in excluding the sheriff's deeds. On the part of the plaintiff in error, this argument was met by the references, deducible, as was contended, from Bull N. P. 173, 66 83, 1 Hay. 24. 2 Bac. Ab.Gwil. Ed. 505, Ten.Rep. 467. 348 2 Hayw. 80, 2 Bac. Ab. 450. The court understands the general principle to be, that the record should show all facts required by law to give jurisdiction so the county court. It is not necessary that the record should show the evidence which enabled the court to act. Being intrusted by law to judge of that, this court is bound to presume that it had the necessary evidence before it, before passing judgment. The su *218 perior tribunal should be strict and careful to see that interior tribunals, possess jurisdiction of the subject matter, but as to the manner of exercising that jurisdiction when their judgments are brought collaterally into view, the law presumes them to be correct, and that all previous requisites and facts, required by law to be shown, to enable them to act appeared; unless the contrary appear from the record ; or unless those preliminary steps were not in pais, or required to be recorded. As a further reason that the record should show all that the law required to be done previous to judgment, it is insisted, that these proceedings under the tax laws, are summary ex parte, and in derogation of the principles of the common law : in support of this position it is urged, that the constitution provides that no man shall be deprived of life, liberty. or property, but by the judgment of his peers, or the law of the land. It is certainly true, that they have the character of summary proceedings, and it is equally true, that they must of necessity be so, for if the government were necessitated to take the cautious and tedious steps of the common law, in giving personal notice, making up regular pleadings, and having a trial by jury, it would cease to exist. Want of money to carry on its necessary operations, loss of credit, and a total extinction of national faith, the basis of all regular governments must be the inevitable consequence. The nicety insisted on by the defendants’ counsel, in relation to the proceedings of the county court, would in a considerable degree produce the same effect. Many things must appear to the county courts agreeably to law, before they render judgment against lands-It must be shown, that the justice appointed to take the lists, has done his duty, in advertising for owners and agents to meet and give lists ; that proper periods have elapsed, that there is no personal property from which the taxes can be made, &c. Few county courts are acquainted with the forms of business, and none that thought it necessary that their records should exhibit this particularity. Nor is it probable, that if they believed it was necessary, that it would be observed in many cases. It would soon be understood, that these defects would invalidate all sales, and consequently but few could be found to purchase. The public revenue so essential to the existence of society greatly impaired, and the owner must injured by his property selling for little or nothing. The court however does not consider these proceedings as ex parte.
Agreeably to the practice and necessities of all govern *219 ments where taxes are imposed on property, the proceedings to enforce payment must be in rem, and are analogous to such proceedings under the law of Nations, where all persons are presumed to be parties. Many of the lands of our country are owned by persons abroad, on whom personal notice could not be served, and if it were necessary to serve notice on each resident, the public revenue would be swallowed up, by the rapine attending its collection. No government, of which we have any knowledge, has adopted this method of proceeding. The law requires that every individual owning lands within the state, should pay the taxes on them: every proprietor is presumed to know the law, and that he should pay without demand or personal notice. In fiscal arrangements, the promulgation of the law, is equivalent to the common law idea of notice. Persons owning taxable property are bound to pay the taxes, though the directory provisions of the law may not have been complied with, by the officers entrusted with their execution.
The ground of jurisdiction is afforded to the county court, by the existence of two facts, first that the property taxed is situated, within the county ; secondly. that its owner is delinquent in discharging the taxes on it, agreeably to law. When the court sees these two facts spread upon the record, it is all that is necessary for it to see, with a view to the legality of a judgment for taxes. In support of a judgment of a court of competent jurisdiction, all directory requisites of the law are presumed to have been complied with, and this presumption attaches as well to the judgments of inferior or limited courts, as those proceeding according to the course of the common law. In the latter, a want of jurisdiction is never presumed—in a court of limited powers, the reverse of this proposition holds. And in the proceedings of all courts where jurisdiction of the subject matter exists, and appears expressly or by presumption, the law presumes, that the exercise of that jurisdiction was regular. A summary mode of levying taxes on lands, had been in existence previous to, and at the time of the formation of the constitution. It was manisfestly the intention of the constitution, that summary proceedings, such as the people had been accustomed to, should not be inhibited.
The expression used in the constitution “ law of the land” communicates the idea of such proceedings of the courts as had been customary, or should thereafter be provided conformably to the spirit of those habits, and of the *220 common law. See 2 Hay. 142, 320, 321, 322. The constitution has no effect on these proceedings. The first and vital principle of all regular governments, is a revenue to support its operations and existence. Without it, the government must soon perish. All governments, to raise this revenue, lay taxes on property, and their proceedings, necessarily must be summary, and in rem, as to that Acts made for the attainment of these essential objects of the state, must receive such construction, as will effectuate the intention of the legislature, where it is not opposed by the provisions of the constitution, or restricted in its effect by legal principles, applicable to the proceedings, necessary to carry into effect, that intention.
The court, is of opinion, that the provisions of these acts, are neither prohibited by the constitution, nor restricted by legal presumption. See 2 Johns. 378 9, 3, Mass. 379, Camp. Rep. 217, Hardin 372, 2 Hav. 135, Add. 186, 1 Caines 594, 4 John. 292, 2 Binn. 209, 3 Caines 141, 152, 162, 1 Bay. 356 7, 2 Bay. 105, 1 Day 170, 310-11 312, Bull. N. P. 245, 2 Gould. Ed. Esp. N. P. 486.
The judgment of the circuit court must be reversed, and the sheriff's deeds given in evidence, in support of the claim of the lessor of the plaintiff.