## Case No. 4,333.

### ELDRIDGE v. The ASHLEY.

[2 N. Y. Leg. Obs. 68.]

District Court, S. D. New York. June, 1842.

A. Nash, for libellant.
E. Seely, for claimant.

PER CURIAM. This suit is prosecuted in behalf of the proctor to recover the costs incurred in the institution of the action, and upon the allegation that the master or owner of the vessel, settled with the libellant the demand for wages, with full knowledge that suit had been brought, and after distinct and positive notice that the demand was assigned and must be paid to the proctor alone. On the hearing before a justice of the peace, in the absence of the judge, those facts were given in proof upon the return of a summons taken out by the libellant, and the justice thereupon gave a certificate that there was sufficient cause for admiralty proofs, upon filing of which the vessel was arrested.

The defence is that the master was always ready to pay the seaman his wages, and did pay them to him personally, at the first opportunity he could have to meet him; and that the seaman who earned the wages is the proper person to whom payment should be made. The proofs show very clearly that the master did not object paying the money to the proctor in the first instance; he professed his readiness to do so and obtained change for making payment,

but then insisted on having a concurrent release of all claims for assaults and other torts committed by the libellant during the voyage. The proctor refused to execute such release, but offered to give a full receipt for the wages, and to receive them without costs. After one or two interviews to the same effect, a summons was sued out, and then the master proceeded to pay the money to the sailor himself. After that payment, the proctor offered to discontinue the suit on payment of the costs to that period, and to allow the payment to the libellant to stand good. This the master peremptorily refused, and then steps were taken to carry forward this action, and written notice was given that it was continued solely for the recovery of costs. This intrinsically is an exceedingly small matter; first, as to the amount of wages in arrear, and secondly, in respect to the costs in dispute when the action was put in prosecution. Yet the case is to be decided upon the same principles that must govern those of highest magnitude, and that would have applied to this, had the demand embraced the earnings of the entire voyage, or the costs for a contested litigation.

The court will be always solicitous to promote the settlement of claims for wages without suit, and regard payment directly to the sailor as the most satisfactory disposition of his money; still the substance and not merely the formula of payment is to be regarded, and the court should be no less awake to the protection of seamen against unjust delays, against costs incurred in pursuing their rights, and against adjustments into which they may be drawn out of eagerness for ready money, or in disregard of the rights of others connected with their demands. In this case, it is made evident upon the proofs that the sailor could not obtain his wages by application to the master, as, though the master admitted them to be due, yet he refused to pay them to a third person, free of costs, unless .he also had an acquittance from all liabilities to the seaman for assaults and batteries, &c. during the voyage. Whether any allegation of such wrongs existed, does not appear, but clearly the master had no right to exact any such collateral stipulation as the condition of paying wages, and the seaman rightfully applied to the court for a legal remedy. The summons against the vessel pursuant to the provisions of the act of congress, was therefore properly taken out; and if this could be regarded the commencement of an action, the question as to the right of the proctor to continue it for satisfaction of costs is settled by adjudications of this court, and the well established practice of courts of law. This doctrine is declared in the fullest terms in Toms v. Powell, 6 Esp. 40; 7 East, 536; 3 Smith, 554; 6 Price, 15; and in this court in the case of The Mary Jane [unreported]. But it is very clear that the summons is not the commencement of the suit in prosecution. It is only an inquiry conducted by the magistrate to ascertain if such suit can be brought. The court does not become possessed of the action before the certificate is filed, if it can be regarded as commenced until the attachment or monition is actually issued. This case therefore in that aspect, does not fall within the privilege of those before cited; the action not having been in progress of prosecution, when the payment was made to the libellant.

The English authorities uphold the practice of going on with an action initiated, to secure payment of costs, when the matter is settled out of court after the retainer of an attorney, and after notice from the attorney or in fraud of his lien. 2 Barn. & Ald. 402; 1 Chit. 241; 5 Bing. 190. And it has been allowed to be commenced for that object when the debt was acknowledged and was paid to the creditor, after the debtor knew an attorney was retained to prosecute its recovery. The state courts do not seem to have been called upon to adjudicate on the incipient rights of attorneys to costs previous to action brought, but their doctrines are clear and definite that the attorney's lien for costs accruing in the prosecution of a suit will be pursued against any settlement between the parties intending to evade or disregard such lien. 15 Johns. 405; 3 Caines, 145; 1 Cow. 172; 10 Wend. 617; 4 Cow. 416.

Passing it by then as a question not settled definitely upon the authorities, whether an attorney can institute a suit to recover his costs created in taking measures to collect a demand admitted to be due and which is settled between the debtor and creditor whilst such measures are in preparation, another feature of the case demands consideration. When the proctor gave notice to the master, he held an absolute assignment of the debt to himself of which the master was fully apprized

This assignment it appears was made in part to cover an advance actually made to the sailor by the proctor, but no doubt the essential object was to put the demand under the control of the proctor, to prevent any adjustment of it except with him. It is understood that these assignments or irrevocable powers of attorney have been the common method by which counsel protect themselves for advances and liabilities in managing sailors' claims, and are not to be regarded as given with the intent to pass over the absolute property in the demand. In point of fact that was undoubtedly the case in respect to this assignment, because the proctor offered to allow the payment made the sailor to stand good if the costs were satisfied by the master. The debt remained substantially the property of the libellant, and the assignment or power of attorney ought to be regarded as operating no further than to protect the proctor's legal or

equitable liens. This certainly would be its interpretation as between the sailor and his counsel; and if any urgent equity intervened demanding that construction to sustain the rights of other bona fide parties, I can perceive no reason in policy or principle for not applying it. But I am not inclined to disturb in this case the adjudication of the magistrate who had all the parties before him, and heard the facts recapitulated immediately after they occurred. He decided that the proctor was entitled to receive the money, and that the master paying with full knowledge of that fact, paid in fraud of that right, and could not set up such payment as satisfaction of the wages. A certificate was accordingly given that the wages had not been paid, and that there was proper cause for process against the vessel. I think the proofs will warrant that decision, and I should not be inclined to disturb it even if the preponderance was the other way, inasmuch as the proceeding of the master was palpably with intent to defeat the costs of the proctor.

The master having put himself upon a mere technical rule, and that having been found against him, he must bear the consequence of his mistake or wrongful intention. I should mark most emphatically, any effort of a proctor to make a law suit out of slight and casual advantages on his side or misapprehensions on the other. If any such purpose was disclosed here, it certainly would not succeed. But I think upon the proofs the conduct of the proctor was forbearing and liberal. He proposed a settlement upon terms entirely to the advantage of the master and owner, but it was refused on a supposed advantage they had obtained by a side adjustment with the sailor, and as that was designed wholly as sharp practice against the proctor, there is no reason for them to complain if failing in it, they have to pay the consequence of their wrongful practices. I shall accordingly decree that the libellant recover in this case his costs to be taxed. Decree for libellant.